**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LAVERANUES COLES and
TROUBLE LIVIN LIFE LLC,

        Plaintiffs,

                                        Case No. 3:15-cv-1521-J-34PDB

vs.

CITY OF JACKSONVILLE,

        Defendant.
_____/

## O R D E R

    **THIS CAUSE** is before the Court on the Plaintiffs' Motion for Partial Summary Judgment (Doc. 53, Coles' Motion), filed by Laveranues Coles and his associated business entity, Trouble Livin Life LLC (collectively "Coles") on May 1, 2017, and Defendant's Motion for Summary Judgment (Doc. 50, City's Motion), also filed on May 1, 2017.  This action arises from the City of Jacksonville's (City) denials of various zoning exception applications submitted by Coles in his effort to open a dancing entertainment establishment (DEE) which serves alcohol (otherwise known as a "bikini bar").  Coles asserts that the City's denials of his applications violated the First Amendment protections of free speech and expression.  See generally Complaint for Injunctive and Other Relief and Demand for Jury Trial, Doc. 1; Complaint.

    In Coles' Motion, Coles, on behalf of himself and Trouble Livin Life, LLC, seeks entry of an order granting partial summary judgment against the City finding that the City's "denial of Plaintiffs' zoning applications lacked competent substantial evidence and deprived

Plaintiffs['] of their due process rights . . . ."  <u>See</u> Coles' Motion at 1.[1]  The City opposes Coles' Motion.  <u>See</u> Defendant's Response to Coles' Motion for Partial Summary Judgment ([Doc. 58](), City's Response), filed May 22, 2017.  Additionally, in the City's Motion, the City seeks entry of judgment as a matter of law on all claims raised in Coles' Complaint.  <u>See</u> City's Motion at 1.[2]  Coles opposes the City's Motion.  <u>See</u> Coles' Response to Defendant's Motion for Summary Judgment ([Doc. 57](), Coles' Response), filed May 18, 2017.[3]  As such, both Coles' Motion and the City's Motion are ripe for review.

## I.    STANDARD OF REVIEW

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[4]  An issue is genuine when the evidence is such that a

---

[1] In support of Coles' Motion for Partial Summary Judgment, Coles attaches a variety of exhibits.  <u>See</u> [Doc. 53](), Attach. 2 – 23.  The Court will refer to these exhibits by their docket denomination, rather than the alphabetical identifiers provided by Coles.  The Court notes that several of the documents attached to Coles' Motion duplicate those previously attached to Coles' Complaint.  <u>See</u> Complaint, Attach. 1 – 6.  Again, for ease and consistency of reference, the Court will refer to the exhibits attached to Coles' Motion and denominated by the Court's CM/ECF docketing system, rather than the alphabetical identifiers provided by Coles.

[2] In support of the City's Motion, the City filed three exhibits.  <u>See</u> City's Motion, Attach. 1 – 3.  The Court will refer to these exhibits as they are identified in the CM/ECF Court's docketing system, rather than by the alphabetical tags provided by the City.  The Court notes that two of the City's exhibits, the Coles Deposition ([Doc. 51-1]()) and the Robbins Deposition ([Doc. 53-3]()), are duplicates of exhibits provided by Coles.  <u>See</u> [Doc. 53]()-3 (Coles Deposition), [Doc. 53-23]() (Robbins Deposition).  Where both Coles and the City have supplied duplicative documents, the Court will cite only to Coles' exhibits.

[3] In support of Coles' Response, Coles attached an exhibit denominated as "Exhibit W."  <u>See</u> [Doc. 57-1]().  As with all other exhibits, the Court will refer to this exhibit as it is identified in the Court's CM/ECF docketing system.

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amends.

reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.  In determining whether summary judgment is appropriate, a

---

The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).   "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Id.  Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).  Notably, the instant action is before the Court on cross-motions seeking summary judgment.  "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment."  T–Mobile S. LLC v. City of Jacksonville, Fla., 564 F.Supp.2d 1337, 1340 (M.D.Fla.2008).  Instead, applying the same principles, "the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts."  Id.

## II.    BACKGROUND[5]

This controversy arises out of the City's failure to grant several requests for zoning exceptions, waivers, and deviations (collectively the Zoning Exceptions) that would allow Coles, and his associated company, Trouble Livin Life, LLC, to open and maintain an establishment that provides patrons with non-nude dancing entertainment along with alcohol in Jacksonville, Florida.  Coles asserts that the City's failure to grant the requested Zoning Exceptions violates his First Amendment Rights and constituted an unlawful restraint on free speech and expression.

In the course of seeking to open his entertainment establishment, Coles entered into a lease with HI LLC, the owner of property located at 5800 Phillips Highway, Jacksonville, Florida ("the Property"). Complaint at ¶ 11.  The structure on the Property was developed

---

[5] Because this case is before the Court on cross-motions for summary judgment, the Court will, when addressing the merits of either party's motion, view the facts presented in the light most favorable to the party opposing summary judgment. The Court will so note its perspective when appropriate. The facts recited in this section are either undisputed, or any disagreement has been indicated. See T-Mobile South LLC, 564 F. Supp. 2d at 1340.

in 1967 as a night club and restaurant and has been used in that manner over the years. See Doc. 53-9 at 2 (Department Report on Application for DEE Serving Alcohol); Doc. 53-10 at 1-2 (Department Report on Application for Distance Waiver for Liquor License Locations); Doc. 53-11 at 1 (Department Report on Application for Reduced Parking Deviation).[6]  In preparing to open a bikini bar on the Property, Coles "spent over $500,000 to redevelop the property, renovate the building and eliminate the [building] code violations and in addition, spent over $300,000 purchasing . . . liquor licenses as required by law." Complaint at ¶ 24.  He also applied for and obtained a license from the Jacksonville Sherriff's Office to operate a DEE.   Doc. 53-18 (License Application for Adult Entertaining/Dancing Entertaining Establishment); Doc. 53-5 (DEE premises license).[7] Coles opened his venue in early 2014, Complaint at ¶ 25, allegedly operating as a restaurant.   See Department Report on Application for DEE Serving Alcohol at 2; Department Report on Application for Distance Waiver for Liquor License Locations at 2;

---

[6] The record contains some suggestion that prior to Coles' rental of the Property, it had functioned as a fully licensed bikini bar with all requisite zoning approvals and exceptions.  Doc. 57-1 at 9 (August 20, 2015 Commission Meeting Transcript).  From this, it appears that Coles may have presumed initially that because the Property previously had received zoning exceptions permitting it to operate as a DEE serving alcohol, he too could continue that use without seeking additional zoning exceptions.  See id at 9; see also Coles Deposition at 63, 80-81.  However, the Jacksonville, Florida Ordinance Code (the Code), section 656.136(c), directs that zoning exceptions associated with liquor license approval do not run with the land, but rather must be granted to the specific applicant.  Code § 656.136(c); see also August 20, 2015 Commission Meeting Transcript at 9.  Therefore, the applicable City Ordinance required Coles to seek a zoning exception for the service of alcohol on the Property.

[7] The record suggests that the order in which Coles obtained the various licenses, permits, and zoning exceptions for his bikini bar was slightly askew of normal procedure, and that it would have been advisable for him to seek the Zoning Exceptions to the Property prior to investing in building renovations, a liquor license, and a DEE license. See Doc. 51-2 at 73 (Braughton Deposition); Doc. 53-4 at 19-23, 35-47 (Huxford Deposition); Doc. 53-13 at 7-9 14-15 (Rees Deposition); Doc. 53-16 at 13 (Lewis Deposition); Doc. 53-23 at 33-34, 35, 28-44 (Robbins Deposition);  August 20, 2015 Commission Meeting Transcript at 8-9.  Some of this confusion may have been born out of Coles' presumption that because he believed the Property previously had received zoning exceptions permitting it to operate as a DEE serving alcohol, he did not necessarily need the Zoning Exceptions.  See supra note 6.  Coles nonetheless acknowledged that he took a risk in proceeding as he did.  See August 20, 2015 Commission Meeting Transcript at 9.

Department Report on Application for Reduced Parking Deviation at 1; August 20, 2015 Commission Meeting Transcript at 8.[8]

At the time Coles rented the Property, it was zoned in the Commercial Community/General-2 (CCG-2) area, where DEEs not serving alcohol are permitted to operate as a matter of right. See Jacksonville, Florida Ordinance Code (the Code), § 656.313(a)(V)(b)(25); Department Report on Application for DEE Serving Alcohol at 1; Department Report on Application for Distance Waiver for Liquor License Locations at 1; Department Report on Application for Reduced Parking Deviation at 1. Therefore, Coles could have operated the Property as a DEE. However, in order to lawfully serve alcohol at his DEE, the Code required Coles to obtain a zoning exception from the City. Additionally, due to the location of the Property, and Coles' desire to make the most of its square footage, he needed to obtain at least two other exceptions/waivers. Hence, in late 2013 and early 2014, Coles requested three different zoning exceptions from the City Planning Commission (Commission), which he believed collectively would have allowed him to lawfully operate a bikini bar on the Property.

First, Coles sought to obtain a zoning exception to operate a DEE serving alcohol. See Application for Zoning Exception to Operate DEE Serving Alcohol; see also Code §

---

[8] The record is somewhat inconsistent as to the services Coles provided when he first opened the venue. Coles' application for a zoning exception to operate a DEE with alcohol, states that the property was currently being used as a "restaurant/dancing club." Doc. 53-6 at 1 (Application for Zoning Exception to Operate DEE Serving Alcohol). Likewise at a City of Jacksonville Planning Commission hearing, Coles testified that during the early days of his establishment, "it was operating as a dancing entertainment establishment, when I was waiting to get [zoning] approval . . . ." August 20, 2015 Commission Meeting Transcript at 9. Coles also testified in a deposition that he originally used the Property as a DEE and restaurant. Coles Deposition at 11, 62. Finally, one of Coles' proffered exhibits states that he "operated a dancing and entertainment facility at the Property that also served food and alcoholic beverages." Doc. 53-22 at 1 (Expert Report of Paul M. Harden). Regardless, at least by 2015, and after Coles initially had been denied his requests for Zoning Exceptions by the Commission, it appears that he only operated a restaurant on the Property. August 20, 2015 Commission Meeting Transcript at 8.

656.313(A)(V)(c)(11) (DEE serving alcohol is a permissible use by exception).  Additionally, because he wished to use the entire square footage of the structure on the Property for a DEE, bar, and restaurant, Coles sought an administrative deviation allowing him to have fewer parking spaces at the Property than the Code otherwise required.  See Doc. 53-8 (Application for Reduced Parking Deviation); see also Code § 656.604 (detailing number of off-street parking spaces required for nightclubs).  Finally, because the Property was located closer to two nearby churches than otherwise permitted by the zoning code, Coles sought a waiver of the minimum distance requirements for a liquor license location.  See Doc. 53-7 (Application for Distance Waiver for Liquor License Location); see also Code § 656.805 (detailing distance limitations for establishments with liquor licenses).  All told, if Coles obtained these three different zoning exceptions/waivers/deviations, he believed he would be able to legally operate the bikini bar as he desired at the Property.

In order to obtain a zoning exception or variance, an applicant must first submit an application to the City Planning and Development Department (Planning and Development Department).  See Code §§ 656.131(a), 656.132(a), 656.133(a).  The Planning and Development Department then issues an advisory report to the City Planning Commission (Commission) regarding the application.  Id. at §§ 656.131(b), 656.132(b), 656.133(a).  The Commission is then responsible for "holding a public hearing with respect to each application for a zoning exception to the Zoning Code," and rendering decision.  Id.  An applicant may appeal a Commission decision to the City Council through its Land Use Zoning Committee (LUZ Committee).  Id. at §§ 656.140, 656.144.  The LUZ Committee, acting on behalf of the City Council, may "affirm, reverse, or modify each contested decision, or it may remand the matter back to the Commission . . .  with specific instructions

7

for further action . . . ." Id. at § 656.145(a).  "When the Council [through the LUZ Committee] acts on a contested decision pertaining to a final action of the Commission . . . , Council action shall be deemed the final action of the City of Jacksonville."  Id. at § 656.145(b).

Coles first filed his applications for the three Zoning Exceptions with the Planning and Development Department in December of 2013 and January of 2014.  See Application for Zoning Exception to Operate DEE Serving Alcohol; Application for Distance Waiver for Liquor License Location; Application for Reduced Parking Deviation.  After reviewing his applications, the department issued reports generally recommending approval of his applications. See Department Report on Application for DEE Serving Alcohol; Department Report on Application for Distance Waiver for Liquor License Locations; Department Report on Application for Reduced Parking Deviation.

The Commission then reviewed Coles' applications during a public meeting held on May 22, 2014.  See Doc. 53-14 (May 22, 2014 Commission Meeting Transcript).  At the start of the meeting, the Commission chair stated that "[t]oday's decisions on land use and zoning matters are only recommendations.  These recommendations will be submitted to our City Council's Land Use and Zoning Committee. . . . The LUZ Committee is under no obligation to adhere to our recommendations . . . ."  May 22, 2014 Commission Meeting Transcript at 1.  In addressing Coles' applications, the Commission began by hearing from a representative from the Planning and Development Department who reported on the department's general approval of the applications.  Id. at 24; Department Report on Application for DEE Serving Alcohol; Department Report on Application for Distance Waiver for Liquor License Locations; Department Report for Reduced Parking Deviation.  See also Code § 656.131(b) (City Department of Planning and Development shall make

an "advisory recommendation to the Commission with respect to each application for a zoning exception."); § 656.132(b) (same for zoning variances); § 656.133(a) (same for zoning waivers).

The Commission also heard from two members of the community, Mr. Wilson and Ms. Jenkins, both of whom spoke against Coles' applications.  May 22, 2014 Commission Meeting Transcript at 25-27.  Wilson expressed concerns about parking at the Property, while Jenkins, a former city council member who had represented the neighborhood, stated displeasure about having another adult themed establishment in an area where several others already existed.  Id.  Coles' representative, Mr. Yancy, also addressed the Commission, arguing in favor of granting the Zoning Exceptions.  Id. at 24, 28.

The Commissioners then discussed a variety of concerns they had with Coles' applications for the Zoning Exceptions including matters of parking, id. at 28, as well as whether a bikini bar would enhance or undermine development in the area.  Id. at 29.  At the close of their discussion, the Commissioners unanimously voted to deny Coles' applications.  Id. at 29-30.  Upon recording their vote, the Chairman reminded Yancy of Coles' right to appeal the Commission's decision.  Id. at 30.  However, Coles did not do so.  Instead, a year later, and as permitted by section 656.136(e) of the Code, Coles resubmitted his applications for the necessary Zoning Exceptions for additional review.

The Commission reviewed Coles' renewed applications at a public meeting on August 6, 2015.  See Doc. 53-15 (August 6, 2015 Commission Meeting Transcript).  Again, the Commission chair reiterated that the decisions of the Commission were only recommendations and that ultimately, all matters would be decided by the LUZ Committee. August 6, 2015 Commission Meeting Transcript at 1.  Similar to the May 2014 meeting,

the Commission heard from the Planning and Development Department which again recommended approval of Coles' applications.  Id. at 22-23.  Additionally, members of the community, id. at 24, and Coles, spoke before the Commission.  Id. at 23, 24-30, 32.  At this meeting, the community feedback focused on concerns regarding parking and the overall sanitation and cleanliness of the Property in relation to neighboring properties.  Id. at 24.  Following the community statements, the Commissioners engaged in a substantive discussion, with feedback from Coles, regarding their concerns and questions relating to his applications.  Id. at 25-32.  During this discussion, the Commissioners discussed whether there was a proliferation of bikini bars and other adult entertainment establishments in the area.  Id. at 27, 32.  They also questioned Coles' ability to provide sufficient parking at his establishment given the size and capacity of the property, and inquired into matters of security. Id. at 25-32.

The structure on the Property had a square footage of 16,000 feet, but the entire Property did not provide sufficient parking.  Hence Coles requested a parking deviation.  Coles explained that if he was able to use all 16,000 feet of the structure, he could utilize the Property as a restaurant, bar, and dancing establishment.  With all three uses present, he could hire off-duty City police officers to provide security at the venue.  Id. at 26, 27, 29.  Notably, pursuant to City regulations, if the Property's use was limited to a DEE serving alcohol, officers could not provide an off-duty security presence.  Id. at 26-27.  Because the security issue was important to Coles, he explained that he wanted to use the entire structure, id. at 30, but in order to do so, he needed the parking deviation.

The Commission considered whether, as a means to alleviate the parking concerns, but also as a "creative interesting way of trying to allow security to be on site," id. at 29,

Coles could reduce his square footage occupancy of the building, but still have all three uses. Id. at 26, 28, 29, 31. However, Coles stated that because of how the building was configured, reducing the square footage was not an option. Id. at 28, 33. As such, if Coles wanted to use all 16,000 feet of the building to house a restaurant, bar, and DEE, he could have police presence, but would need a parking deviation. Alternatively, he could reduce his square footage use of the Property, limiting it to being a DEE serving alcohol. Doing so would alleviate the parking concerns, but would undermine his ability to have City security presence. Hence, the questions regarding building size, building usage, parking, and security were necessarily intertwined.

At the end of the discussion, the Commissioners appeared to have more questions than answers as to whether they should grant Coles' applications for the requested Zoning Exceptions. They therefore voted to defer their decision on the matter until the next Commission meeting scheduled to be held two weeks later. Id. at 34. In the interim, the Planning and Development Department was to work with Coles to try to address the Commission's parking and security concerns. Id. at 33, 34.

Two weeks later, on August 20, 2015, Coles again appeared before the Commission for a public hearing on his applications for the Zoning Exceptions. August 20, 2015 Commission Meeting Transcript at 4. Following the same format as the May 2014 and the August 6, 2015 meetings, the Commission heard from the City's Planning and Development Department which again recommended approval of Coles' applications. Id. at 4-5. Ms. Jenkins, who had spoken at the May 2014 meeting, returned to reiterate her opposition to the approval of another DEE serving alcohol in the area. Id. at 5-7. Finally, Coles addressed the Commissioners. Id. at 5, 7, 8. At that time, Coles reported

that he had entered into an informal arrangement with a property owner across the street (Phillips Highway).  That owner agreed that Coles' patrons could park at that property.  Id. at 5.  Likewise, Coles reported that other neighboring property owners had agreed that Coles' patrons could park on their neighboring properties.  Id. at 5.

The Commissioners then engaged in a discussion regarding Coles' applications.  The Commissioners expressed concerns that even with the parking agreements with neighbors, there would still be more cars at Coles' establishment than the general area could sustain.  Id. at 9-10, 11, 12.  Likewise, some Commissioners reiterated their concern regarding the increased number of adult themed establishments in the area, and their stated disagreements with the Planning and Development Department's recommendations.  Id. at 10, 13.  Additionally, the Commissioners disagreed among themselves as to whether Coles had done all that was necessary to obtain the requested Zoning Exceptions, some believing that despite their personal disfavor for bikini bars, Coles should be granted the exceptions, id. at 11, while others still questioned whether Coles had indeed satisfied the requirements for his requested exceptions.  Id. at 11-12.  Ultimately, the Commission voted, 5-2, to deny Coles' requested Zoning Exceptions.  Id. at 13.

Coles then filed a timely appeal to the LUZ Committee as was his right pursuant to Code sections 656.140-141.  On or around December 4, 2015, the LUZ Committee remanded the matter back to the Commission, noting that Coles needed to apply for an additional exception relating to distance requirements applicable to bikini bars and adult entertainment establishments.  See Expert Report of Paul M. Harden at 2-3; see also Code § 151.202(c) (detailing interplay of distance requirements for bikini bars and other adult

entertainment and service facilities); § 656.1103 (imposing, among other things, distance limitations between adult entertainment, service facilities, and DEEs).  In doing so, the LUZ Committee gave Coles 60 days to file his additional zoning exception applications.  City's Motion at 13.  However, Coles took no further action on the LUZ Committee's remand to the Commission, and instead, at the end of December 2015, filed this action in federal court.  Complaint at 1.

In his action before the Court, Coles seeks relief pursuant to 42 U.S.C. § 1983, asserting that the City violated his rights under the First and Fourteenth Amendments to the United States Constitution by undermining his ability to open a DEE that serves alcohol.  Specifically, Coles asserts three claims.  First, he alleges that the City's denial of his requested Zoning Exceptions violated his Constitutional rights, thereby warranting an injunction, costs and attorneys' fees, and any other relief granted by the Court.  Complaint at ¶ 74.[9]  The Court construes this claim as an "as applied challenge" to the Code.  Second, Coles asserts a facial challenge against the Code as it pertains to regulating bikini bars.  Id. at ¶ 75-79.  However, in his response to the City's Motion, Coles withdrew this claim.  See Coles' Response at 19-20.  Therefore, the Court will not address it further.  Third, Coles alleges that because of the City's denial of his requested Zoning Exceptions, he suffered a variety of lost business opportunities, and therefore seeks damages from the City.  Complaint at ¶ 80-83.  Both parties subsequently filed motions seeking entry of either full or partial summary judgement.

---

[9] In Coles' Response, Coles notes that the Property is currently for sale.  Should the Property be sold prior to the resolution of this matter, Coles indicates that likely he would seek only monetary damages.  Coles' Response at 1, n.1.

### III.    ARGUMENTS OF THE PARTIES

In the City's Motion, the City asserts that the Court lacks subject matter jurisdiction over this case.  Specifically, the City contends that Coles' claims are not ripe because he never received a final decision from the City regarding his 2015 requests for the Zoning Exceptions.  City's Motion at 11.  In the alternative, the City asserts that should the Court determine that Coles' claims are ripe, Coles cannot show that the City's denials of his requests for Zoning Exceptions were driven by discrimination against the form of expression that was to occur in his establishment.  Id. at 13-16.  Therefore, according to the City, the Court should grant summary judgment in its favor.  In response, Coles asserts that the claims are ripe, and even if they were not, any attempt on his part to seek a final decision from the City would have been futile.  Coles' Response at 2.  Additionally, Coles asserts that the City's denials of his zoning exception applications violated his Due Process rights in that they represented "an arbitrary and irrational interference" with his right to use the property in accordance with the First Amendment.  Id. at 16-17.[10]

In Coles' Motion,[11] he contends that the City's denial of his zoning exception applications was not supported by any substantial competent evidence and therefore

---

[10] In his response to the City's Motion, Coles argues for the first time that the City violated his procedural due process rights.  Id. at 11-16.  He also fleetingly suggests that the City's refusal to grant his applications was motivated by racial animus.  Id. at 18.  These arguments are not properly before the Court.  Coles cannot interject new causes of action against the City in his response to its motion for summary judgment.  See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).  A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.") (citation omitted)).  As such, the Court will not address these new claims.

[11] Coles titles his filing as a "Partial Motion for Summary Judgment."  However, in the motion he does not identify the claims or issues on which he is seeking judgment as a matter of law, or those on which he is not.  Generally, Coles' Motion asserts that he is seeking judgment in his favor because the "Defendant's denial of the [zoning exception] applications was without an appropriate basis in law."  Coles' Motion at 18.  Because Coles has withdrawn his facial attack on the City's Ordinance, the Court concludes that Coles is seeking summary judgment on the issue of liability on Counts 1 and 3 in which he presents his remaining as applied challenge, as well as his claim for loss of business opportunities.  See Complaint at 13, 19.

violated his Due Process rights.  Coles' Motion at 9, 12.  Hence, Coles asserts he should be granted summary judgment.  In response, the City contends that having abandoned his facial challenge to the City ordinance, Coles' claims are reduced to mere state law challenges to the City's zoning procedures.  City's Response at 2.  As such, the City argues that there are no federal claims before the Court.  Id. at 6.  The City also reiterates its ripeness arguments.  Id. at 7-8.  Ultimately, the City asserts that Coles "simply [has] no evidence to create a disputed issue of fact as to any federal claim actually made in the Complaint, and the City is therefore entitled to judgment as a matter of law."  Id. at 10.

## IV.    DISCUSSION

Federal courts are courts of limited jurisdiction and are constrained to address only those claims which present actual cases and controversies.  Beaulieu v. City of Alabaster, 454 F.3d 1219, 1227 (11th Cir. 2006) (citing U.S. CONST. ART. III, § 2, cl. 1; Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003)).  Integral to a court's determination of the existence of subject matter jurisdiction is the question of whether the matter before the court is ripe for adjudication.  See Bauknight v. Monroe Co. Fla., 446 F.3d 1327, 1331 (11th Cir. 2006) ("Ripeness is an issue of subject matter jurisdiction.") (citing Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 (11th Cir. 1989)).  Here, the City contends that judgment should be entered in its favor because Coles' claims are not ripe for review.  City's Motion at 11.

"The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes."  Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir.1997).  Generally, courts must inquire as to the "fitness of the issues for judicial decision, and . . . the hardship to the parties of

withholding court consideration." Nat'l Adver. Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005) (citing Abbott Lab. v. Gardner, 387 U.S. 136, 148–49, (1967); Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir.1995)).   The Eleventh Circuit Court of Appeals has also recognized "that the ripeness doctrine not only protects courts from abusing their role within the government and engaging in speculative decision-making, but that it also protects the other branches from judicial meddling." Nat'l Adver. Co., 402 F.3d at 1339. As the Supreme Court explained in Abbott Lab., "a 'basic rationale' of the ripeness doctrine is 'to protect the [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Digital Properties, Inc., 121 F.3d at 590 (citing Abbott Lab., 387 U.S. at 148–49). As such, "when a court is asked to review decisions of administrative agencies, it is hornbook law that courts must exercise patience and permit the administrative agency the proper time and deference for those agencies to consider the case fully." Nat'l Adver. Co., 402 F.3d at 1339.

The federal courts have developed ripeness jurisprudence in the context of land use and zoning controversies drawing from the Supreme Court's decision in Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).     In Williamson County, the Supreme Court considered whether a case was ripe in the context of a Fifth Amendment regulatory takings challenge. Williamson County, 473 U.S. at 186. The Court concluded that "[b]ecause respondent has not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures [the state] provides for obtaining just compensation, respondent's claim is not ripe." Id. While the Williamson County case was decided in the

context of a Fifth Amendment just compensation claim, several circuit courts have extended its holding to equal protection and due process claims arising out of zoning disputes.  See e.g., Insomnia Inc. v. City of Memphis, Tenn., 278 Fed. Appx. 609, 613 (6th Cir. 2008) (noting extension of Williamson County holding by the Second, Third, and Seventh Circuits);[12] Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 349-50 (2d Cir. 2005) (noting extension of Williamson County holding by the Third, Seventh, and Ninth Circuits).

The Eleventh Circuit has been more circumspect in its willingness to broadly apply the Williamson County ripeness holding to all land use and zoning matters.  See Eide v. Sarasota County, 908 F.3d 716, 724-25 (11th Cir. 1900) (discussing the proper application of the ripeness principle to various property rights challenges).  The court first applied Williamson County's ripeness requirement in Greenbriar, Ltd., 881 F.2d 1570 (11th Cir. 1989).  There, the plaintiffs claimed that a municipality's decision to reject their rezoning petition was arbitrary and capricious resulting in a violation of their substantive due process rights.  Id. at 1573.  In addressing whether the claim was ripe, the Greenbriar court cited the Williamson County decision and stated that "the decision of a municipality is not ripe for review unless that decision is final and definite with respect to the property at issue." Id.

Later, in Eide, the Eleventh Circuit revisited its application of Williamson County. 908 F.2d at 724.  There, the court questioned the Greenbriar court's reliance on Williamson County, but nonetheless ultimately agreed with the Greenbriar court's decision.  Id. at 724.

---

[12] In citing to Insomnia, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority."  United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally FED. R. APP. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

The Eide court explained that in the context of land regulation controversies, a plaintiff might raise four types of constitutional challenges:  just compensation claims, due process regulatory taking claims, due process arbitrary and capricious claims, and equal protection claims.  Id. at 720-722.  The Eide court further noted confusion among courts regarding these different types of claims and how to evaluate whether any given type of claim was ripe.  Id. at 722-23.  The court determined the claim before it was an arbitrary and capricious due process claim, id. at 723, and also determined that the claim in Greenbriar was similarly an arbitrary and capricious due process claim.  Id. at 724.[13]

The Eide court then criticized the Greenbriar decision, stating that the court "placed improper reliance on Williamson County" and read the Supreme Court's decision too broadly.  Id.  Rather, the Eide court explained that the Williamson County decision should be limited to its facts, stating:

> a closer reading of Williamson County reveals that it did not involve what we refer to in this opinion as an arbitrary and capricious due process claim. In footnote 4 [of Williamson County], the Supreme Court clearly stated that it was not addressing a substantive due process claim (i.e., what we refer to in this opinion as an arbitrary and capricious due process claim).  Rather, Williamson County involved the type of claim we have referred to in this opinion as a due process takings claim.

Id. at 724 n. 13.  As such, the Eide court concluded that the ripeness analysis the Williamson County Court used was not directly applicable to the claims raised in the Greenbriar and Eide cases.  Id.

Nonetheless, in addressing when a due process arbitrary and capricious claim is ripe, the Eide court articulated a rule that echoed the Supreme Court's holding in

---

[13] The Eide court described these claims as being one where a plaintiff contends that "the regulation is arbitrary and capricious, does not bear a substantial relation to the public health, safety, moral, or general welfare, and is therefore an invalid exercise of the police power."  Id. at 721.

Williamson County, 473 U.S. at 186, and the Eleventh Circuit's earlier ruling in Greenbriar. 881 F.2d at 1573.  The Eide court held that "[i]f the [zoning] authority has not reached a final decision with regard to the application of the regulation to the landowner's property, the landowner cannot assert an as applied challenge to the decision because, in effect, a decision has not yet been made." Id. at 725.  Therefore, while the Eleventh Circuit has not expanded the application of the Williamson County decision to the extent of some other circuits, its approach to determining when an as applied challenge to a zoning regulation is ripe is by no means contrary to, or dismissive of Williamson County.  See e.g., Tari v. Collier County, 56 F.3d 1533, 1535-56 (11th Cir. 1995) (citing to and relying on both Eide and Williamson County in the course of determining the ripeness of an arbitrary and capricious zoning claim).[14]

Moreover, the Eleventh Circuit's approach, while eschewing a conclusion that Williamson County strictly applies to arbitrary and capricious due process challenges, nonetheless generally rests in easy alliance with the decisions of those circuits which have extended Williamson County's "final decision" rule to land use cases addressing constitutional harms beyond that of the Fifth Amendment's taking clause.  See Insomnia Inc., 278 Fed. Appx. at 613 (final decision rule applied to a First Amendment challenge to land use zoning decision); Murphy, 402 F.3d at 350 (noting circuit's application of final decision rule in substantive due process claims and First Amendment Claims); Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285, 1292-93, 1294-95 (3d Cir. 1993) (final

---

[14] The Eleventh Circuit continues to cite to Williamson County when evaluating whether a Fifth Amendment regulatory takings claim is ripe.  See e.g., Hadar v. Broward County, 692 Fed. Appx. 618, 619-20 (11th Cir. 2017); Bauknight, 446 F.3d at 1330; Bickerstaff Clay Products Co., Inc. v. Harris County, Ga. by and through Bd. of Comm'rs, 89 F.3d 1481, 1490-91 (11th Cir. 1996); Reahard v. Lee County, 30 F.3d 1412, 1414-15 (11th Cir. 1994).

decision rule applied to equal protection, substantive due process and procedural due process challenges to land use zoning decision); Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496, 1507 (9th Cir. 1990) (final decision rule applied to due process and equal protection claims); Unity Ventures v. County of Lake, 841 F.2d 770, 775 (7th Cir. 1988) (final decision rule applied to an equal protection and substantive due process challenge to land use zoning decision).  Thus, in determining whether Coles' claims in this action, which present as an applied due process challenge to the City's decisions, are ripe, the Court must determine whether the City has "reached a final decision with regard to the application of the regulation to [Coles'] property." Eide, 908 F.2d at 725. If it has not, Coles "cannot assert an as applied challenge to the decision because, in effect, a decision has not yet been made." Id.[15]

While a party generally must establish that a zoning authority has reached a final decision in regard to a proposed land use, the party may nonetheless be excused from this requirement where it would be futile to obtain a final decision.  See Ward v. County of Orange, 217 F.3d 1350, 1356 (11th Cir. 2000) (discussing futility); Strickland v. Alderman, 74 F.3d 260, 265 (11th Cir. 1996) ("An exception to the final decision requirement exists where it would be futile for the plaintiff to pursue a final decision."); Corn v. City of Lauderdale Lakes, 816 F.2d 1514, 1516 (11th Cir. 1987) (noting futility exception). Although the Eleventh Circuit recognizes the principle of futility, it has not settled on a standard for evaluating futility in the context of arbitrary and capricious due process challenges to land use regulations.  See Strickland, 74 F.3d at 265 n.6; Eide, 908 F.2d at

---

[15] In Coles' Response, he notes that the exhaustion of administrative remedies is not required to bring a § 1983 claim.  Coles' Response at 3 (citing Beaulieu, 454 F.3d at 1226 (citing Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 516 (1982))).  While correct, Coles must still satisfy "constitutional ripeness requirements." Beaulieu, 454 F.3d at 1228.

726-727 n. 17; id. at 727-28 (Shoob, J., concurring); see also Reserve, Ltd. v. Town of Longboat Key, 933 F. Supp. 1040, 1044-45 (M.D. Fla. 1996).   Nonetheless, the court has emphasized that "decisions on ripeness issues are fact sensitive."  Eide, 908 F.2d at 727; id. at 728 (Shoob, J., concurring) (noting deference that should be extended to district courts in evaluating ripeness and futility claims); Strickland, 74 F.3d at 266 (noting fact sensitive nature of ripeness and futility claims); Reserve, 933 F. Supp. 1045 (a "fact-specific inquiry . . . should govern a district court's determination of the application of the futility exception.").   Additionally, the Eleventh Circuit has stated, albeit in other contexts, that when a party asserts a claim of futility, that party bears the burden of establishing that the exception applies. See M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1159 (11th Cir. 2006) (discussing futility in Americans with Disabilities and Rehabilitation Act case); Jaimes v. United States, 168 Fed. Appx. 356, 359 (11th Cir. 2006) (discussing futility in a prisoner habeas action); Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 905 (11th Cir. 2000) (discussing futility in breach of contract non-compete employment case).   Notably, circuit courts that have addressed the futility exception more definitively have held that the burden of proving futility is a heavy one.  See Steward v. City of New Orleans, 537 Fed. Appx. 552, 555 (5th Cir. 2013) (plaintiff was unable to meet "heavy burden" of futility); Ricon v. City and County of Honolulu, 124 F.3d 1150, 1161 (9th Cir. 1997) ("The landowners' burden of showing that complying with the state procedures would be futile is a heavy one."); Gilbert v. City of Cambridge, 932 F.2d 51, 61 (1st Cir. 1991) ("Since obtaining a final municipal decision should be the rule . . . the burden of establishing futility must lie with the party seeking to bypass the permit procedures – and any reasonable doubt ought to be resolved against that party.").

Finally, in the course of discussing the fact sensitive nature of ripeness questions, the Eleventh Circuit has cautioned that the

> requirement of a final decision involving a specific development plan before suit may be filed is supported by an important reason: zoning is a delicate area where a county's power should not be usurped without giving the county an opportunity to consider concrete facts on the merits prior to a court suit.

Eide, 908 F.2d at 726 n. 17.  The policy considerations emphasized by the court in Eide are supported by the Second Circuit's decision in Murphy, 402 F.3d at 348.  There, in holding that a challenge is not ripe until the "developer . . . obtain[ed] a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations," id. at 348, the court laid out four policy considerations supporting its holding.

> First, . . . requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record.  Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel.  Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible. Finally, . . . courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

Id. (internal citations omitted).  Therefore, a court's ripeness or futility decision is necessarily influenced, in part, by a respect for the independent and local powers vested in municipal zoning boards.

With these legal foundations in place, the Court turns to the City's assertion that Coles' challenge to its decisions is not ripe.  The core questions the Court must answer

are whether a genuine issues of fact exist as to whether Coles received a final decision from the City in regard to his zoning exception applications, and if not, whether it would have been futile for him to attempt to obtain a final decision.  If the answer to both of these questions is no, then Coles' action is not ripe.  In the alternative, if there is no genuine issue of fact with regard to whether Coles failed to obtain a final decision on his zoning exception applications, but there is such a question as to whether it would have been futile for him to attempt to obtain a final decision, or if whether he received a final decision on his applications, then summary judgment is due to be denied on the issue of ripeness and Coles' claim must be permitted to proceed.

In many cases where a ripeness challenge has successfully been asserted, the plaintiff's zoning application efforts were non-existent or cursory at best.  See e.g., Digital Properties, Inc., 121 F.3d at 590-91 (case not ripe where plaintiff assumed, based on a verbal exchange with a city employee, that zoning code would not permit his proposed land use); Strickland, 74 F.3d at 266 (plaintiff's failure to comply with building permit application process rendered claim not ripe); Tari, 56 F.3d at 1536 ("the decision of the [Zoning] Code Enforcement Investigator to send [a] Notice [of violation], much like the decision of a police officer to make an arrest, was not a final decision to apply the zoning ordinance to [plaintiff's] property."); Tini Bikinis-Saginaw, LLC v. Saginaw Charter Township, 836 F. Supp. 2d 504, 518 (E.D. Mich. 2011) (claim not ripe where plaintiff failed to seek a "decision from any of the governmental entities charged with implementing" the relevant zoning code); Nat'l Adver. Co. v. City of Miami, 288 F. Supp. 2d 1282, 1290 (S.D. Fla. 2003) (case not ripe based on verbal "over the counter" statement by city representative that city would not accept plaintiff's building plans); Ward v. County of

23

Orange, 55 F. Supp. 2d 1325, 1335 (M.D. Fla. 1999) (case not ripe where plaintiff failed to seek adult entertainment license and zoning variance before filing case in federal court). Such is not the case here.  Coles has demonstrated a diligent intent to obtain the appropriate licenses, permits, and zoning exceptions to allow him to lawfully operate a DEE serving alcohol at the Property.  Nonetheless, the undisputed facts establish that the City has not made a final decision on Coles' applications for the requested Zoning Exceptions.

Eleventh Circuit precedent establishes that where a municipality's zoning exception or variance application process "explicitly provides for an 'appeal' to the authoritative local decision maker . . . the appeal must be fully pursued before any definitive 'final' decision occurs."  Reahard, 30 F.3d 1412, 1416 n. 10 (11th Cir. 1994).  As noted earlier, at the beginning of each Commission meeting, the Commission chair unequivocally explained that any decisions reached by the Commission were recommendations only, subject to review and potential reversal, by the LUZ Committee.  See May 22, 2014 Commission Meeting Transcript at 1; August 6, 2015 Commission Meeting Transcript at 1; August 20, 2015 Commission Meeting Transcript at 1.  Likewise, the City Code provides that "the person who filed the application for zoning exception, variance, or waiver," may appeal any final decision or order of the Commission to the LUZ Committee.  See Code § 656.140. The Code further states that the LUZ Committee "may affirm, reverse, or modify each contested decision, or it may remand the matter back to the Commission . . . with specific instructions for further action . . . ."  Id. at § 656.145(a).  Finally, the Code instructs that

> [w]hen the [City Council LUZ Committee] acts on a contested decision
> pertaining to a final action of the Commission . . . , [the LUZ Committee]
> action shall be deemed to be the final action of the City of Jacksonville as

of the effective date of the resolution and shall be subjected to no further review under this Code.

Id. at § 656.145(b).

Here, while Coles initially availed himself of the appeals process in regard to the Commission's August 2015 denial of his zoning exception applications, he ultimately short circuited the process.  The LUZ Committee's remand directed that Coles still needed to seek an additional distance exception in order to operate a DEE serving alcohol at the Property.  However, he did not pursue obtaining that exception.  Instead, he abandoned his zoning exception applications on remand before the Commission, thereby depriving the Commission of the opportunity to evaluate any future submissions, and depriving the City of the opportunity to make a final decision on his requests.

The Court recognizes that the concept of ripeness generally is more loosely applied in the context of a First Amendment challenge.  Harrell v. The Florida Bar, 608 F.3d 1241, 1257-58 (11th Cir. 2010); Digital Properties, Inc., 121 F.3d at 590; Cheffer, 55 F.3d at 1523 n. 12.  However, given the facts presently before the Court, a finding that Coles' challenges are ripe simply is not supported by the record. Indeed, without a final decision on Coles' applications for Zoning Exceptions, the Court is unable to evaluate the basis, constitutional or otherwise, of that decision.[16]  Therefore, Coles' claim is not ripe.[17]

---

[16] In considering whether Coles has presented a case ripe for adjudication, the Court must also inquire as to whether the parties would suffer hardship if the Court were to withhold consideration of the matter.  Nat'l Adver. Co., 402 F.3d at 1339.  The Court is not convinced the record demonstrates that Coles has demonstrated he will suffer an undue hardship should the Court decline to hear his case at this time.  Any hardship or losses Coles has suffered since initiating this litigation could have been alleviated had he sought the additional distance exception from the Commission, and filed any appeals to the LUZ Committee, if necessary. Id. at 1341.

[17] Coles cites to Reserve, 933 F. Supp. at 1045, and Taylor v. City of Riviera Beach, 801 So. 2d 259, 263 (Fla. 4th D. Ct. App. 2001), to support his position that this case is ripe for judicial review.  Coles' Response at 4-5.  Neither case successfully advances his argument.  First, and in direct contrast to the facts before the Court, in Taylor, the court found that the defendant city had denied the plaintiff's building permit application, thereby constituting a final agency action.  Taylor, 801 So. 2d at 263.  Therefore, the case was ripe for judicial

Nor is the Court convinced that Coles has met his burden of showing, at a minimum, that a genuine issue of fact exists on the question of whether it would have been futile for him to attempt to obtain a final decision from the City.  See Strickland, 74 F.3d at 265 ("An exception to the final decision requirement exists where it would be futile for the plaintiff to pursue a final decision."); Eide, 908 F.2d at 727 (in the context of evaluating futility, "[d]ecisions on ripeness issues are fact-sensitive").  Here, Coles asserts that his case falls squarely within the futility exception because the City is "sit[ting] on [his] application by remanding it without rendering an ultimate, final decision."  Coles' Response at 7.  He contends that "given the tenor of the circumstances surrounding the City's actions," whereby the City denied his applications because of its alleged discrimination against bikini bars, it would be futile for Coles to attempt to obtain a final decision from the City. Id.

Upon consideration of the record, the Court concludes that Coles has failed to carry his burden of establishing the existence of a genuine issue of material fact as to the futility exception.  First, it is undisputed that it was Coles, not the City, who stopped processing his zoning applications and has stymied the process.  Hence, Coles' difficulties in obtaining exceptions to the zoning regulations are partly of his own making.  Second, the undisputed evidence established that the LUZ Committee did not make a final decision on the merits

---

review.  Id.  Second, in Reserve, the court focused far more on the futility exception to the ripeness requirement than on the matter of ripeness itself.  Reserve, 933 F. Supp. at 1044-45.  There, the court noted that while the case was likely not ripe, the futility exception might nonetheless preclude dismissal of the action.  Id. at 1044.  In examining the question of futility, the Reserve court initially acknowledged the important role district courts play in evaluating the fact-specific nature of the exception.  Id. at 1045.  The court then, after reviewing the particular facts of the case before it, concluded the plaintiff "may litigate the question of whether the futility exception excuses its failure to obtain a 'final decision' from the defendants." Id.  Hence, rather than providing an example of why a case might be ripe, Reserve emphasizes all the more that Coles, in failing to obtain a final decision from the City on his requests for Zoning Exceptions, has not presented a live controversy to the Court.

of the Commission's denial because it determined that Coles' application was incomplete. Specifically, Coles still needed to seek an additional distance exception in order to legally operate a DEE with alcohol.  <u>See</u> Expert Report of Paul M. Harden at 2-3.  In Coles' Response, he disagrees with the applicability of this distance requirement.  Coles' Response at 14-15.  He is incorrect.  As noted by the City in its Response, in 2014 the City amended the regulations governing DEEs, requiring that such establishments comply with the distance requirements for adult entertainment facilities.  <u>See</u> City's Response at 6-7, n.6.  Specifically, the revised Code notes that

> [e]ach licensed premises shall comply with and be subject to the placement and distance requirements set forth in Part 11, Chapter 656, Ordinance Code.  For purposes of these requirements, in every instance where the term "adult entertainment or service facility" is used within Part 11, Chapter 656, it shall be replaced with and understood to mean "dancing entertainment establishment" as such term is set forth and defined

in the Code.   Code § 151.202(c).   Additionally, the Code states that "[n]o adult entertainment or service facility shall be located on a site unless the site equals or exceeds all the distance limitations required by this subsection: [including o]ne thousand feet from the boundary of another adult entertainment or services facility." <u>Id.</u> at § 656.1103(a)(1).[18] Accordingly, the LUZ Committee's remand of Coles' application to the Commission so that Coles could seek the additional distance exception is fully supported by the Code.  If after he did so, the Commission rejected Coles' completed application, he retained the opportunity to seek a full review, and a final decision, from the LUZ Committee on his requested Zoning Exceptions.   <u>See</u> Code § 656.140-145 (detailing zoning appeals process).  Coles has not taken these additional steps.

---

[18] It is this portion of the Code for which section 151.202(c) commands that the words "adult entertainment or service facility" be replaced with and understood to mean "dancing entertainment establishment."  Code § 151.202(c).

In evaluating Coles' claim of futility, the Court recognizes that the record discloses a number of concerns considered by the Commission in making its non-binding zoning recommendations regarding Coles' requested Zoning Exceptions, from which one might glean a potential distaste on the part of the Commission for bikini bars.  See e.g., May 22, 2014 Commission Meeting Transcript at 28 (parking concerns), 29 (proliferation in the area of DEEs serving alcohol); August 6, 2015 Commission Meeting Transcript at 25-33 (parking and security concerns), 24-25, 33 (ensuring proper maintenance and cleanup of Property grounds), 28, 32 (proliferation in the areas of DEEs serving alcohol); August 20, 2015 Commission Meeting Transcript at 9, 12 (parking), 10, 12 (proliferation in the area of DEEs serving alcohol).  Nonetheless, the Commission's decision remained a non-binding recommendation, subject to further review.  However, as a result of Coles' abandonment of his applications, there still lacks any final decision or a stated basis for such a decision. Finally, and of most significance, the Commission's stated concerns associated with its review of Coles' applications for the Zoning Exceptions, shed no light on how the LUZ Committee would view a properly submitted and complete application by Coles.  He points to no evidence that if he obtained the additional necessary exception, the LUZ Committee would not look favorably on his appeal, if such an appeal was even still necessary.

In short, Coles never took the steps necessary to complete his application nor does he provide the Court with sufficient facts suggesting that doing so would have been futile. At most, he presents a circular argument that because the City allegedly is discriminating against bikini bars, it is futile for him to seek the additional distance exception.  However, in so arguing, Coles is presupposing a determination on the merits of his case to shore up

his position on futility.  Coles also presents the report of an expert, Paul M. Harden, who

states with very little explanation or analysis, that

> [b]ased on my experience and the Planning Commissions['] prior decisions,
> any attempt to seek additional exceptions or waivers from the Planning
> Commission after the matter was remanded by the LUZ [Committee] would
> have been futile.  And given the history [of the matter thus far] any further
> remand would not likely have resulted in a favorable decision for the
> Plaintiffs.

Expert Report of Paul M. Harden at 3.  Setting aside the obvious fact that this statement

is highly speculative, at best, it does not change or undermine the undisputed fact that

Coles had to address the distance requirement imposed by the Code in order to submit a

complete application.

Viewing the "evidence and mak[ing] all reasonable inferences in favor [Coles, as]

the party opposing summary judgment," Haves, 52 F.3d at 921, the Court is unpersuaded

that Coles has raised an issue of fact on the question of futility.  While

> futility can excuse a plaintiff's eschewal of a permit application, the mere
> possibility, or even the probability, that the responsible agency may deny
> the permit may not be enough to trigger the excuse.  To come within the
> exception, a sort of inevitability is required: the prospect of refusal must be
> certain (or nearly so).

Gilbert, 932 F.2d at 61.  Similarly, Coles has not pointed to evidence suggesting that the

City has "dug in its heels and made clear that all such applications will be denied," Murphy,

402 F.3d at 349.   Rather, because he opted out of seeking the additional distance

exception, Coles denied the City an opportunity to reach a final decision on his requested

Zoning Exceptions.  Therefore, the Court concludes summary judgment is due to be

granted in the City's favor because Coles' claims are neither ripe, nor subject to review

under the futility exception.

The Court notes that its decision is fully supported by the policy considerations cited by the Eleventh Circuit, and others, when examining ripeness questions in land use zoning settings.  Eide, 908 F.2d at 726 n. 17; Murphy, 402 F.3d at 348.  In particular, "zoning is a delicate area where a [city's] power should not be usurped without giving the [city] an opportunity to consider concrete facts on the merits prior to a court suit."  Eide at 908 F.2d at 727 n. 17.  Likewise, "[r]equiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."  Murphy, 402 F.3d at 348.  Moreover, here there remains the outstanding issue of whether Coles could obtain an exception to the applicable distance requirements.  Without a resolution of that uniquely local issue the Court must not address the speculative and abstract constitutional question of whether, if he could do so, a denial of the requested Zoning Exceptions might constitute a constitutional violation.  The Court must respect the constitutional and jurisdictional bounds embodied in the ripeness doctrine, as well as the dignity of local sovereigns, who are best situated to address and resolve, in the first instance, matters of zoning and community development.  As such, Coles has not presented a ripe controversy subject to review by this Court.

Accordingly, it is

**ORDERED**:

1. The City's Motion for Summary Judgment (Doc. 50) is **GRANTED**.

2. Coles' Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof (Doc. 53) is **DENIED**.

3. This case is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

4. The Clerk of the Court is directed to terminate any remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 7th day of December, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc26

Copies to:

Counsel of Record